Good afternoon, Illinois Appellate Court, First Division. First District Court is now in session. This is the Fifth Division, case number 1-7-2-3-2-5, People v. Mario Alano v. Transform SRLLC, Justice Mathias DeLore presiding. Good afternoon, everyone. Before we begin the arguments, I'm going to ask counsel for appellant. We have an order that was entered allowing a split argument, I believe it's between Ms. Harris and Mr. Zimmerman. Can you please advise how you're going to divide your time and which of the two of you will go first? Good afternoon, Your Honor. Ms. Harris is going to handle the argument and I will not be presenting any argument. All right, that simplifies things. Thank you. The second question is that the court previously entered an order substituting Transform for the prior defendant, Sears. The briefs that we have before us were filed under the name of Sears. Does Transform adopt the briefs filed by Sears in their entirety? Yes, Your Honor. This is Francis Satir on behalf of Transform. You're correct that by order dated January 29th, 2020, Transform was substituted for Sears and we of course adopt the argument of Sears. And in fact, I was going to suggest that throughout my argument, in all likelihood, I will refer to Sears as opposed to Transform partially, I think, out of habit. All right, thank you very much. With those housekeeping details having been resolved, I'll advise both sides that we'll allow 15 minutes for argument for each side. We'll give another five minutes for a reply at the end. And please keep in mind that we are going to handle this argument as a normal argument. In other words, we will not give you a block of time at the time, but we will ask questions throughout. All right. And Your Honor, I unfortunately, I think I was, my sound was not correct at the outset of your housekeeping comments. So I apologize. I missed what you might have said at the outset. What I said was, we'll allow 15 minutes for each side for argument, five minutes for a reply. And keep in mind that we are not going to follow the practice of some other divisions where under they would allow a block of uninterrupted time. We are going to ask questions as we normally would at any time. Sure. All right. With that, the counsel for appellant, are you ready to proceed? I am, Your Honor. Good afternoon. This is Francis Satir on behalf of Transform Co, which as we indicated a short while ago was the second time the trial court has awarded plaintiff patently unreasonable attorney's fees for recovering $3.10 in what plaintiff conceded was just, quote, a garden variety run of the mill consumer fraud litigation. The court, this court reversed the last award because it found that the billing record the trial court relied on was inadmissible. On remand, the trial court awarded plaintiff $267,470 after violating the law of the case and this court's mandate by again admitting the billing record into evidence and relying on it to determine the reasonableness of the time spent on the case prior to trial. Court's order violates both the Illinois Consumer Fraud Acts prevailing party and reasonable requirements and is not supported by credible admissible evidence. Mr Saterra, one of the arguments the other side makes is that Sears engaged in a Stalingrad defense, which unduly increase the cost of the plaintiff. What is your response to that argument? Um, yes, Your Honor. And this same issue was raised in the prior appeal. At the time we tendered $1,000 to the plaintiff to resolve the case. This was shortly after the case had been transferred to the municipal court because plaintiff decided not to pursue what was originally filed as a nationwide class action. At the time we had a $1,000 settlement, plaintiff responded with a request for fees that exceeded $90,000, even though the majority of those fees were incurred in pursuing a failed class action. So from the very outset, we were not defending a fees or at least plaintiff's purported fees in excess of $90,000. So faced with the choice of either settling the case for, you know, at the time, 95,000 plus the $3.10 we had, at least in our view, no choice but to continue to litigate the case. Indeed, as we pointed out, both in our briefs and in the prior appeal, the Judge Mason had expressed extreme skepticism over both Mr. Aliano and Mr. Navas claims. And it was a result of that skepticism that plaintiff chose not to pursue what had started as a nationwide class action, but instead, an individual run of the mill Consumer Fraud Act. The trial court based its award of $267,470 in pertinent part upon findings that under the Illinois Consumer Fraud Act, the plaintiff was the sole prevailing party in what the briefs describe as the second appeal and entitled to recover fees for that appeal in spite of the fact that plaintiff was unsuccessful in its fee request and only successful in the second appeal on affirming the $3.10 judgment. In addition, and also your opponent is going to turn around and say, he succeeded on 100% of his compensatory damage claim. And it was the success on that compensatory damage claim that entitled him to attorney's for an evidentiary hearing because of improperly admitted evidence. We never said that he wasn't entitled to fees. That's correct. But the significance of Aliano too, is in his favor. Well, I think there is is certainly case law, and we cited it in our brief that you look at the totality of what was on appeal. And I think the courts in this state have cautioned that if a plaintiff, if a party, not only a plaintiff, but also a defendant only succeeds on partially affirming the result, then the recovery of attorney's fees might not be appropriate. I mean, here, there were two issues on appeal in Aliano too. The $3.10 judgment, you're correct, your honor, which was affirmed, but the $157,000 in fee award was reversed. Moreover, plaintiff concedes that he's unable to identify which of those fees incurred in pursuing Aliano too were pursued in affirming the $3.10 judgment as opposed to the fee award. You know, when when looked at, obviously the $157,000 fee award far exceeded the $3.10 judgment that was the case for further proceedings, it made clear that the billing record was inadmissible. And that is the issue that this trial court violated the mandate by admitting not only the the original 2013 billing record, but then additional time for 2013, in which the underlying records were not available. So there were two errors with regard to the 2013 billing entries, both of which violate this court's mandate. Obviously, there was a new procedure put in place that Mr. Zimmerman's law firm beginning January 1, 2014, in which the time was entered directly into the billing program, but but certainly the time, all of the time from 2013, which the trial court relied on was the billing records that this court ruled were inadmissible in what what you're describing as Aliano too. Both exhibits 56 and on this issue of prevailing party, it appears to me that Hensley versus Eckert stands for the proposition that a party can be considered a prevailing party, if they're successful on any significant issue. Now, we can't. Is it your argument that the affirmance of the compensatory damage award was not a significant issue? And this can be there? Can there be more than one prevailing party? Well, there certainly can be and in fact, in powers versus Rockford stop and go, which is one of the cases cited in our brief, the court concluded when the dispute involves multiple claims, and both parties have won and lost on different claims, it may be inappropriate to find that either party is the prevailing party. I agree with you. But I find no authority. Other than I believe in one of the concurring opinions in Hensley, that attorney's fees are a separate claim. Because attorney's fees, a party under the Consumer Fraud Act, is entitled to pray for attorney's fees, if they are successful on the underlying claim. Now, it's part and parcel of the same. I understand in a concurrent opinion in Hensley, there is some authority for the suggestion that attorney's fees is substantive, and should be viewed almost as a separate count. But I find no majority authority for that proposition. Well, that that may be true as to attorney's fees. But again, in powers where the court concluded that when value, complexity and time are related to environmental contamination in that case. So here, I think it's fair to say the most significant issue on appeal was the award of attorney's fees. And indeed, at the prior argument, I, you know, I devoted very little time to the argument in regarding the $3.10 judgment and devoted the both the brief as well as the oral argument to the fee award. And the court agreed with with those arguments and and you know, as I said, concluded that the billing record was inadmissible. But that's that's the the certainly the fees with regard to the second appeal are just a portion of what the plaintiff is claiming here. If we look at the time spent prior to 2014, the award of those fees was legal error because it violated the law of the case and this court's mandate. The court's opinion in Aliano to established as law of the case that the time entries and plaintiff's 2013 statement are inadmissible evidence upon which the trial court cannot rely in calculating the fees plaintiff can recover. As this court held based upon the reasoning in DeLarco, we find that the circuit court or aired as a matter of law in admitting the 2013 statement into evidence in the absence of the plaintiff's production of the original time sheets and in relying upon that plaintiff's recoverable fees under kraut sack. Therefore, the admissibility of plaintiff's counsel's billing statements reflecting information contained an original handwritten time sheets that were destroyed and cannot be produced was litigated in the second appeal or Aliano to and could not be The original time sheets underlying the entries in the billing statements that are plaintiff's exhibits 56 and 57 were not and could not be produced. The admission of those exhibits into evidence is error therefore because it violate indeed it overturns the law of the case. Significantly, the trial court not only aired by admitting those two exhibits, it compounded that error by relying on these exhibits to purportedly determine the reasonableness of the time spent and to calculate plaintiff's recoverable fees prior to 2014. As it's order as the trial court order evidences the trial court ignored Mr. Zimmerman's testimony when it determined the reasonableness of the hours prior to 2014 and relied instead upon the entries in plaintiff's exhibits 56 and 57. Now plaintiff argues that the trial court did not air because it relied upon counsel's testimony to prove the pre 2014 hours spent. These exhibits were properly admitted as secondary evidence that their admission did not violate the court this court's mandate and alternatively that the time entries the trial court references could just as likely be entries in plaintiff's proposed findings of fact and conclusions of law. But that's absolutely not correct. Sure. Thank you. The contention that Sears could sufficiently test the exhibits 56 and 57 because there was an evidentiary hearing likewise ignores this court's finding that these billing records are inadmissible because Sears was deprived of an opportunity to test the reliability and accuracy of the statements by comparing entries contained therein with the original time sheets upon which those entries are based. Contrary to the assertion made by Sears, the trial court did not state in Aliano 2 that plaintiffs may introduce secondary evidence if he repels every inference of fraudulent design in the destruction of the original time sheets. On remand the trial court improperly relitigated the admissibility of these secondary time records and under Sears's undisputed authorities this is error. Finally the contention that the trial court just as likely relied on entries in plaintiff's proposed findings of fact and conclusions of law is easily disproved because the trial court's order quotes verbatim the precise entries it relied upon and they are found in Sears's findings. I searched for where the trial court admitted 56 and 57 I couldn't find it. That's that's number one and number two the line item description of service time expended who performed it and what the billing is contained in a billing printout that's attached to the petition for fees. Where in the trial court's memorandum does it say that it relied on exhibits 56 and 57 as opposed to merely analyzing the billing statement that was attached to the in going through the trial court's opinion which is found in the appendix beginning of page. I have it in front of me tell me the page. So on starting on pages six and seven particularly page six where it starts reasonableness of the hours prior to 2014 and he the trial judge begins with a detailed analysis of each of the time entries that are found specifically in exhibits 56 and 57 depending on the particular time. You don't dispute that but the exact same time entries are found on the Now and no doubt there are an exact copy of the exhibit that we suggested was inadmissible in a line you know two but it's the allegation that this was performed. Your opponent says the only thing that the trial court relied on was the veracity of the testimony refreshed recollection testimony of Mr. Zimmerman. It didn't rely on anything else. Well I think that's belied by the opinion where he's where the trial court is quoting specific entries. I mean for example at appendix six likewise the 11-1-2 entry quote final trial preparation and goes on to review if you compare each of those entries to what's in 56 and 57 they are identical matches. Now question 56 and 57 are identical matches to the description in the billing statement attached to the petition for fees. My question is where in the transcript will I find that 56 and 57 were admitted in if they were offered and the memorandum opinion says they were offered but I find no reference to where they were admitted. I will provide you with that reference I certainly have it and I can look for that at the and provide it to you at the beginning of my rebuttal. I would appreciate that. Thank you. Thank you Thank You counsel for appellee you may proceed when ready. Good afternoon Sharon Harris on behalf of the plaintiff appellee Mario Alejandro. May it please the court. First Sears violation of the Consumer Fraud Act was affirmed on appeal. This was the significant issue on which plaintiff prevailed. The court found that Sears collection of excessive sales tax from consumers was a violation of the Consumer Fraud Act. That was a significant issue and Sears tries to say that the fees were the significant issue but we wouldn't even get to fees unless you first find that there was a violation of Consumer Fraud Act. And here plaintiff got the full amount of his damages that he sought and that shows that he prevailed on appeal. And then on remand it was remanded for determining reasonable fees based upon admissible evidence and the trial court had a three day evidentiary hearing where it heard the testimony of attorney Zimmerman. There were 57 exhibits introduced by plaintiff. The record from the circuit court was in the courtroom and attorney Zimmerman referenced it during his testimony and the court's own knowledge of presiding over the trial of the matter. The court awarded plaintiff's attorney's fees of $267,470. An abusive discretion standard applies to the fee award. And Sears argues that the award should be reviewed de novo but the trial court did not exceed the bounds of the remand by admitting the pre 2014 billing records exhibits 56 and 57 or make erroneous conclusions of law as to who was the prevailing party. So the abuse of discretion standard applies. Additionally, the credibility of attorney Zimmerman is reviewed under the manifest way to the evidence standard. And the court found that he was credible after a three day evidentiary hearing where he could witness where the trial court witnessed attorneys Zimmerman's testimony firsthand. This here is putting aside the issue of the evidentiary problem. There is case law cited by your opponent to the effect that when computing attorney's fees, you don't only look at the hours and the work performed, but you also look at whether a basically a reasonable lawyer in the marketplace would have charged a that amount of money to recover such a small amount of damages. And in this case, we've got a $3 damage award versus a couple 100,000 in fees. Who is going to, you know, walk into a law office and say, I'm willing to pay you $200,000 to recover $3 for me. And why isn't that important for our analysis? Well, I would say that because the consumer product has no to address small damages in crowdstock versus Anderson, a Supreme Court case. It says the fee shifting provision is in the consumer product because the Illinois legislature, which is to deter deceptive and unfair conduct in consumer transactions, even when the amount is small. But at a certain point, you know, that that analysis makes more sense in a action setting where you are achieving a recovery for a large class. At some point, this case stopped being a class action and became a $3 small claim. I don't think that matters to the analysis, whether it's a class action or not. Um, the Ellen Consumer Fraud Act is not just for class actions. It has a deterrence effect on corporations, and it's specifically designed for that to, um, to benefit consumers by allowing attorneys to bring these small claims to advocate for consumers rights and so that large companies don't defraud individuals. And I think here the deterrent effect, um, was achieved because Sears was found to have violated the Consumer Fraud Act. And there's plenty of cases. Miss Harris, I have a couple of questions with something that you said you suggested that the trial court relied on something other than Mr Zimmerman's testimony. In your brief, you declare that the only thing the trial court relied on was Mr Zimmerman's refresh recollection. And specifically, I note that if you take the hours that you requested in your fee petition, and you subtract from that the hours which the trial court found to be unreasonable, excessive or lacking in sufficient documentation, you get the $267,470 Lodestar, and then he awarded 100% of that. So which is it? Did he rely on something other than Mr. Zimmerman's testimony? I mean, you retreat from that proposition in your brief? No, I do not. He definitely relied on the testimony of attorneys Zimmerman. Um, I think the only thing I said was that the court also had its own knowledge of the case to confirm whether the fees were reasonable. Well, the court has its own knowledge of portions of the case, number of hours spent in the courtroom, uh, looks at certain pleadings, but the court certainly didn't have its own knowledge of the hours necessary to prepare for an appeal, the hours necessary to respond to discovery. This is all based, I believe, based in according to your brief on Mr. Zimmerman's refreshed recollection testimony. Yes, it is. The only thing I was trying to say is that the reasonableness of that time is the the trial court based that on its own, um, observing, observing the trial court proceedings. Not according to the memorandum opinion. According to his memorandum opinion, he excised it because he found it to be lacking in description in the fee petition. He found it to be excessive and gave his reasons why an experienced attorney of Mr Zimmerman stature should not be spending the number of hours he spent researching certain issues that he should have known. Uh, but in this particular case, I'm trying to figure out whether the trial court entered its recollection of Mr Zimmerman after excising the hours that it found to be excessive or unreasonable. Yes, I believe that's what the court did. Okay. Okay. All right. Um, and just getting back to the reasonableness of the fees compared to the recovery of damages, I would just like to mention one of the cases we cited Mendez versus the town of Cicero 2016 ill apt 1st 1 57 91. It was a whistleblower act claim where the court, the jury found there was a retired retaliatory transfer and, um, the plaintiff did not get any emotional distress damages but was entitled to reinstatement of her position. And despite this nonimal or in the amount of $330,000 and 412 $330,412. And, uh, that's a case we cited in our brief. And then since we found our brief, I found another case, Thomas versus Weather Guard Protection company. Hold on. Did you cite the case in your brief? No, it's additional authority. Okay. You can't argue without putting your opponent on orders. Okay. Understood. This here is, um, the defendant says that Judge Donnelly did not consider any of the factors that were required to be considered to determine the reasonableness of the fees. Um, do you agree with that? And where, in the opinion, is the consideration of those factors? I don't agree with that. Um, the judge specifically cited Kaiser, the opinion that has the factors. He cited it in his opinion. And, um, Zimmerman testified to the novelty and difficulty at the evidentiary hearing. And then the court cited Kaiser and struck various tasks that it found were not novel or difficult, which shows specifically that the court considered it. Um, for example, on page eight, the court struck some time for research relative to discovery that it thought was not novel or difficult. Um, and another one of the Kaiser factors, whether the case is important, the circuit court found that a fee award would help deter other retailers from such carelessness regarding the taxation of such transactions in the future. And further found that Aliano sought to benefit a broad class of consumers. So that's another one of the Kaiser factors that Aliano's individual claim was not brought for the benefit of any class of consumers. It was bought for him only and claim from the very beginning of the claim as an individual claim. It was known that the maximum amount of actual damages that could be recovered was $3 and 10 cents. I mean, he didn't benefit any classic consumers. The class action that was proceeding forward other than his was the one that benefited consumers, not his case. And what's novel about what Mr Zimmerman referred to is a garden variety consumer fraud litigation. What was novel in this case? Either Sears overcharged $3 and 10 cents in sales tax or they didn't. And the only thing he had approved was what did the Department of Revenue say was the way to calculate the tax based upon these coupons or whatever they were. And either they did or they didn't. They did. And I don't think anyone disputes that. The real dispute in the underlying case was whether you can say Aliano relied on it. And in Aliano 2, second case, second appeal, that we actually decided, we said the trial judge found him credible when he said he relied. And we weren't going to disturb that. But there was nothing novel about this case. I I'm at a loss to understand where the novelty was. I agree with Mr Zimmerman. This was garden variety consumer fraud litigation. Your Honor, I think, well, first of all, I want to go back to where you said that this his individual action didn't didn't benefit consumers. It does benefit consumers in that it serves as a deterrence for corporations so that they make sure that they are not improperly charging tax to consumers. When you say serves as a deterrent to what negligence? I mean, because in his original decision in this case, the trial judge specifically found there was no showing of bad faith on the part of Sears, which, by the way, is also one of the factors that should have been considered. I believe you're correct that he didn't find bad faith. But if my recollection is correct, he did find that Sears did not have the policy in place in their stores to correctly calculate the tax. And then they also didn't have anything implemented to make sure that I guess the changes were implemented with Kmart, but not with Sears. And the court found that Sears intentionally didn't have anything in place to make sure that their Sears stores would calculate the bills tax correctly. I also want to touch on where you said that you that this wasn't a novel or complex matter. I'd like to mention Sears said in their first appeal that the damages at issue do not reflect this case's significance that's in their papers in their first appeal. And Zimmerman testified as to complexity of this matter. There's complex issues about voluntary payment doctrine, whether it applied. There's a novel issue of law concerning whether the Illinois Consumer Fraud Act allows a retailer to improperly collect a tax or fee and then remit it to the state. There's a question of whether defendants tender of $1000 mooted out the plaintiff's claims. There was the issue of whether the court could take. I don't think Miss Harris. I don't think the question of the tender of the $1000 compared to the $95,000 demand for fees goes to that issue. What it goes to the issue of is who was at fault for running up the meter in this case? Was it the plaintiff's fault for demanding $95,000 in fees? Or was it for a Stalingrad defense that was put on by Sears? Now that has to be determined before one can come to the question, I believe, of whether awarding 100% of the Lodestar is reasonable. Once you determine the Lodestar, that Lodestar should be adjusted upward or downward based on a sites with approval, the federal case of Johnson. And it gives a whole list of things that must be considered. And the Illinois Supreme Court, I believe, in crowdshot lists a number of factors. Now, one of the questions I have is, did he ever even address that issue? Is the who was at fault here? I mean, you cannot run up fees, and then claim I'm entitled to them. But if fees are run up against you, you certainly have every right in the world to demand payment for it, which wasn't. Sears definitely ran up the fees in this case, because when they tendered the $1,000, they knew that didn't even cover the costs at that point in the case. So there's no way that Plaintiff's counsel would it would be reasonable for them to take less than their costs in the case. It didn't even cover any fees. And Plaintiff's counsel made a counter demand, and there was no response to that. And instead, Sears put 10 attorneys on their files to litigate this to file a denied by the court. And then it went to trial. And there was briefs after trial findings of fact conclusions of law. And it was definitely with Sears that, you know, like I said, they the damage, they said the damages to issue do not reflect this case's significance. They took it as a very serious case. They took the issues as very significant. And they ran up the bill and left Plaintiff's counsel no choice but to litigate it to trial. Miss Harris, your time has expired. Let me inquire of my colleagues if there are any other questions. Nothing further for me. Thank you. Thank you, Miss Harris. Could you please conclude? Sure. I didn't get to touch on all the issues. But I just want to reiterate that the three day evidentiary hearing, the significant issue was who was was whether the consumer product was violated. There was no error in admitting exhibits 56 and 57. As secondary evidence, the court did not go beyond the bounds of the remand. The court specifically said that the fees were proven by means other than the 2013 records. That's specifically from the opinion. And even if the court did consider exhibits 56 and 57, the court found that Mr. Zimmerman had repelled every inference of fraudulent design and disposing of the handwritten timesheets. And the appellate court in the prior opinion said if the if you're able to inference of fraudulent design, it could be introduced a secondary evidence. And why would the court put that in their opinion unless they were inviting that analysis? And for those reasons, I request that the fee award be affirmed. Thank you, Miss Harris. Mr. Saterra, your rebuttal. Thank you, Your Honor. Um, although this court is familiar with with the underlying facts, let me just touch on a couple of facts, which I think go to some of the issues raised by Judge Hoffman. Um, in October 2011, Judge Mason stated I'm not comfortable with Mr. Aliano, a professional class representative who had the same kind of timing. First thing he does when he's overcharged is call a lawyer. She provided Mr. Aliano with an opportunity to come into court to assuage her claim. Instead, plaintiff withdrew the motion for class certification and went to the municipal court. Now, what's important here is that two months later, in mandatory court annexed arbitration, plaintiffs sought fees and costs of $95,000, 89,000 of which were litigating his failed class action claims through October 27, 2011. Um, and 6,000 approximately $6,000 litigating his $3.10 claim. When the arbitrators issued an award in Sears favor, plaintiff paid $200 to reject it. So plaintiff paid $200 to reject the arbitrators award, even though, as Judge Hoffman correctly points out, the maximum recovery was going to be $3.10. It was after that that Sears tendered $1,000 to resolve the matter. So unable to settle without paying over $90,000 in fees, plaintiff plaintiff incurred in pursuing a failed class action. It was only then that the $3.10 claim proceeded to trial. But the $200 would have been recoverable as costs if he prevailed at a judicial trial, wouldn't it? Um, I believe that that's correct. But but I think the point is that this was always about once the case went to municipal court, it was always about plaintiff's fees and was never about Mr. Aliano's individual claim. Um, and as this court stated in Palm, uh, an appropriate fee consists of reasonable charges for reasonable services and must be justified by more than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to a client. Since this type of data without more does not provide the court with sufficient information as to their reasonableness. And as this court may recall in Palm there, the plaintiff offered up an affidavit of a retired judge. We don't have any type of evidence like that. In this case, instead, the trial court did exactly what this court has repeatedly cautioned against after term after determining the proprietor propriety of the requested hourly rates. It simply did a multiplication. Accordingly, the trial court aired as a matter of law by failing to properly determine the requisite reasonableness of the fees it awarded. As a consequence, it abused its discretion because it's $267,000 award violates the consumer products reasonable requirements. Uh, with respect to your question, uh, Judge Hoffman in, uh, page five of the trial court memorandum opinion. This is the question with regard to the admissibility of secondary evidence. Um, at the bottom of page five, the last full paragraph, uh, Judge Donnelly describes the, uh, the following series is cross of Zimmerman. Never suggest the destruction of the time sheets was fraudulent. It never challenges his credibility regarding his good faith in the destruction of the time. She, uh, Sears never argues that Zimmerman did not work the hours, build on so forth. And then he goes on to say, given his unrebutted and unchallenged testimony regarding his good faith with respect to the destruction of time sheets, the court finds that Zimmerman destroyed the sheets in good faith and repelled every instance of fraudulent design. Consequently, secondary evidence may be admitted. And that secondary evidence is indeed, uh, exhibits 56 and 57. I believe it can be. I think you can be strongly argued that Zimmerman's testimony was a secondary events. It wasn't just because he's, have you got me a page reference? I will. Yeah, uh, the record, I will do that, but I don't, I don't have the exact page reference in front of me. Uh, but I, but no, I, I think it's clear. I mean, I disagree with the court that the secondary evidence was testimony was secondary evidence. He testified virtually, uh, in hoc verba as to time date description, uh, who performed it from the 2013 records, at least as it went up to, I think, may of 2014, but, uh, the, the quarter 2013, the question that I have was, was 56 and 57 ever admitted. Now I would like to find it and file a very short memo to the court that says nothing more than you will find the admission of 56 and 57 on such and such a page of the record. I'm not inviting initial briefing. No, no. I understand that your opponent, your opponent claims in his brief that the only thing the trial court relied upon was Zimmerman's refresh recollection testimony. That's what he says. That's what the trial court relied upon. And by the way, he testified to every line item on the 2013 billing, the revised statement that came out in June, I think of 2016, all the way up through December 31st, I think of 2013, he said, but I will do exactly what, what you've asked, but, but to be clear at the top of page five, Aliano contends secondary evidence of the destroyed time sheets becomes admissible because the evidence establishes that Zimmerman destroyed the original without any intention to prevent its use as evidence. And by repelling every evidence, every inference of fraudulent design in its destruction as secondary evidence, Aliano moves into evidence, the 2013 record. So I think it's clear that we understand he moved them. I want to know if they were ever admitted. Okay. But I think, I don't think the, I think it's clear. You may obviously disagree that the secondary evidence is the time sheets, not the testimony. I think the opinion is clear in that regard. Thank you. Okay. Any other questions? Now, thank you counsel for your arguments. The matter will be taken under advisement and court will stand adjourned.